IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA    PLAINTIFF | * * * | |
| v. | * * | CR. NO. 1:06-CR-00107-MHT |
| MICHAEL DAVID HARVEY,    DEFENDANT | * * | |

**MOTION FOR VARIANCE FROM SENTENCING GUIDELINES**

Comes now Defendant, Michael David Harvey, by and through counsel of record, and moves the Court for a variance from the sentencing guidelines and in support thereof states as follows:

1. Defendant is to be sentenced on August 13, 2007 after pleading guilty to two counts of violating Title 18 U.S.C. §2241( c).

2. The Presentence Investigation Report (PSR) sets the guideline range of imprisonment at 292 to 365 months. Defendant contends a sentence within the guideline range is excessive and unreasonable given the totality of the circumstances surrounding this case.

3. Under the Supreme Court ruling in *U.S. v. Booker, 543 U.S. 220; 125 S. Ct. 738; 160 L. Ed. 2d 621*, the sentencing court has authority to vary from the guideline sentencing range. Though district courts post *Booker* must still consult the Guidelines and take them into account when sentencing, after calculating the correct Guideline range, the court may impose a more severe or more lenient sentence, as long as the sentence is reasonable. *U.S. v. Terry, 427 F. Supp. 2d 1132, 1137 (M.D. Ala 2006),* citing *U.S. v. Crawford, 407 F.3d 1174, 1178 - 1179 (11th Cir. 2005)*.

1

3. The factors set forth in *18 U.S.C. § 3553(a)* continue to guide sentencing and will necessarily inform whether a sentence is reasonable. *U.S. v. Booker, 543 U.S. 220, 261-62; 125 S. Ct. 738, 766; 160 L. Ed. 2d 621.* The primary goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary, to punish the offender, protect the public from further crimes by the defendant, rehabilitate the defendant, and deter other people from committing similar crimes. *18 U.S.C. § 3553(a). U.S. v. Terry, 427 F. Supp. 2d 1132, 1137 (M.D. Ala 2006)*

4. 18 U.S.C. §3553(a) requires courts to consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to punish the offender, protect the public from the defendant, rehabilitate the defendant, and deter others; (4) the kinds of sentences available; (5) the sentencing range established by the Sentencing Guidelines; (6) any pertinent policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need for restitution.

5. "The sentencing court's obligation under the current sentencing regime may be summarized as follows: review the PSR for accuracy and rule on any objections; calculate the total-offense level and criminal-history score; rule on any possible upward or downward departures; determine the final Guideline range; and, finally, with the appropriate Guideline range in mind, determine and impose a sentence that serves the purposes set forth in *§ 3553(a)*." *U.S. v. Terry, 427 F. Supp. 2d 1132, 1137 (M.D. Ala 2006).*

**Nature and Circumstances of the Offense**

6. The nature and circumstances in this case would not of themselves warrant the court varying from the sentencing guidelines. The matters raised in this part of Defendant's motion are intended to provide the court with a broader perspective on the actions of Michael Harvey. This is certainly a serious offense. In all particulars, the PSR presents a correct and adequate statement of the <u>nature</u> of the offense. The defendant, Michael Harvey, was eighteen years old at the time of the offense. On separate occasions one day apart, Defendant placed his hand inside the victims pants and fondled his penis and buttocks for a period lasting several minutes.

7. The <u>circumstances</u> of the offense require some amplification of that which is contained in the PSR. Michael Harvey was staying with the victim's family because his mother had "kicked him out of the house" and his father "didn't want him to live with him either . . . because [Michael] was causing marital problems." See statement of victim's mother attached hereto as Exhibit A. The victim's parents had been told that Michael had experienced some "issues of misbehavior" in the past. As a result of this knowledge, the victim's parents took some precautions for the time Michael would be staying with them including, being "the last to sleep and the first to wake up, put[ting] alarms on all our doors inside the house and two on [the victim's] door." See statement of victim's father attached hereto as Exhibit B. The victim's parents home was located on Fort Rucker and Federal jurisdiction is obtained in this case because the offense took place in a territorial jurisdiction of the United States.

8. The purpose in raising this issue is not to suggest that the parents were in any way responsible for permitting Michael's action, but to suggest that Michael's actions were not

predatory in nature. Michael, for example, did not find his victim on the internet or stalk his victim through a play ground or at school. After being "kicked out" of his own home, having nowhere else to go, found refuge in the victim's parent's home and, regrettably, allowed himself to engage in inexcusable acts for which he, the victim and his family will pay an unnecessary price. The history and characteristics of Michael, to be discussed infra, relate directly to the circumstances surrounding his conduct in this case.

9. While it is recognized that any inappropriate sexual contact with a child is harmful and reprehensible, all such conduct is not equal in degree with respect to intent to do harm or harm actually done. The circumstances surrounding the present case involve the fondling of the victim. The victim was not restrained, threatened, or physically injured.

**History and Characteristics of the Defendant**

10. While the facts set forth in the PSR concerning Michael Harvey's Offender Characteristics are accurate, Michael's history and characteristics are far more complex than the PSR reveals.

11. A Forensic Psychological Evaluation was conducted regarding Michael and a report was prepared by Dr. Catherine L. Boyer, Ph.D.. A copy of Dr. Boyer's report is attached hereto as Exhibit C. Dr. Boyer's report contains the following pertinent references which extracts have been selected for the sake of brevity and not to direct the Court's attention away from the entire report.

    A. Behavioral Issues

    i. "There is some question that [Michael] may have been sexually abused at a very

young age by his mother."

  ii. "Treatment records indicate that the mother had worked as a prostitute and had multiple affairs during her marriage to Mr. Harvey's father."

  iii. "The mother also reportedly has had a drug problem."

  iv. "Mr. Harvey recalled some experience of sexual abuse as a child, the first around age five or six. He stated that, while living with his mother, two older girls had him take off his clothes and get on top of them."

  v. "On another occasion, he woke up to find a male friend of his mother's touching his genitals."

  vi. "Mr. Harvey has a history of mental health treatment as a child, including at least one hospitalization, due to significant behavioral problems. His problems included sexually inappropriate behavior beginning as early as age five."

  vii. "Some of his behaviors included Exposing himself to a teacher, masturbating in class, masturbating in the doctor's waiting room, touching the breasts of a bus monitor."

  viii. "Around age 12, he fondled a seven year old girl in the backseat of the car her mother was driving."

  ix. "He also recalled spending a lot of time looking at his father's sexually explicit magazines."

  x. "Mr. Harvey reported that he has made an effort to change his behavior. It appears from his self-report at least that he has had the most success in controlling behaviors of a physically hurtful nature." (Last paragraph, Page 3)

  xi. He expressed the belief that 'we have to respect the things that God put on earth. He

reported that he has been trying to be 'kind and respectful." (Last paragraph, Page 3)

xii.   "His sexual pschopathology likely has its roots in early sexual abuse, in view of its severity and early onset. Sexual abuse also was a likely contributor to other past behavior problems." (Paragraph 4, Page 5)

B.   Mental Health Issues

i.   "Available records reflect treatment as early as 1991 [age 5], with diagnoses of Attention Deficit Hyperactivity Disorder and Conduct Disorder." (Page 2)

ii.   "Mr. Harvey was also diagnosed at one point with Intermittent Explosive Disorder. He was treated with several psychotropic medications." (Page 2)

iii.   "In a 2000 evaluation, . . . reflected a presence of obsessive sexual thoughts. There was some discussion in treatment records of Mr. Harvey being referred to a program for juvenile sexual abusers, but this was apparently never done." (Page 2)

iv.   "Mr. Harvey acknowledge his past behavioral and sexual problems." (Page 2)

v.   "He indicated that sometimes he has been able to refrain from sexually inappropriate behavior, but upon further discussion, it appeared that his sexual thought and impulses are often experienced as compulsive and difficult to resist. He indicated that if there is an opportunity to do something, he feels that he must, even when he does not want to ." (Page 3)

vi.   "[A]s a child, he was cruel to animals, but he stopped doing this around age 12 and developed affection for animals."(Page 3)

vii.   While physically he appears his age, his demeanor and interaction style are those of a younger individual." (Page 4)

  viii. "There were no signs of a psychotic disorder." (Page 4)

  ix. "While he denied gaps in his memory that might suggest ongoing dissociative symptoms (often seen in victims of abuse), Mr. Harvey did report that he does not remember a lot of his childhood." (Page 4) Notwithstanding his being only recently removed from his childhood being only 19 years old (Movant's observation).

  Educational and "Intelligence" Issues

  i. "Mr. Harvey's past behavioral problems [and sexual preoccupation] interfered with his ability to function in a school environment."

  ii. "At some point he was placed in special education and eventually placed in an alternative school."

  iii. "There is reference to a past IQ score of 57, which would be considered in the mildly mentally retarded range, but one treatment report noted that his cognitive ability appeared more in the low average to average range."

  iv. "He left school in the eleventh grade when his father kicked him out due to continued behavior problems . . . ." He went to live with his mother and never re-enrolled in school.

  v. "Mr. Harvey obtained a Standard Score [on the PPVT] of 88, which falls in the low average range for the PPVT." (Page 5)

  12. Much of Dr. Boyer's report is substantiated in the report of the Federal Bureau of Prisons which has been made a part of the PSR and, for the sake of brevity, is not addressed herein. However, it should be noted that the FBP report was prepared in response to Defendant's concern that his statements should be suppressed while Dr. Boyer's report focused "primarily on Mr. Harvey's sexual adjustment." See the second paragraph on page 5 of Dr. Boyer's report.

**Need for the Sentence Imposed to Punish the Offender, Protect the Public from the Defendant, Rehabilitate the Defendant, and Deter Others**

13. As stated supra, the primary goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary, to punish the offender, protect the public from further crimes by the defendant, rehabilitate the defendant, and deter other people from committing similar crimes. *18 U.S.C. § 3553(a). U.S. v. Terry, 427 F. Supp. 2d 1132, 1137 (M.D. Ala 2006)*

14. Certainly, there can be no argument that a sentence should be imposed of sufficient length to accomplish the objectives of punishing Michael for his offenses, protecting the public from him, rehabilitating him and deter others from similar conduct. The issue is the reasonableness of the length of such a sentence in accomplishing those objectives. It is difficult to imagine, under the circumstances of the present case, the necessity of a sentence ranging from 292 months (24 + years) to 365 months (30 + years) to accomplish such objectives.

15. Furthermore, the court should take into consideration the conditions under which Defendant should be incarcerated which would be necessary to meet these stated objectives. Defendant draws the Court's attention to certain provisions under Paragraph 3c. of the Defendant's Plea Agreement which relates to Title 18 U.S.C. §4248. Under this provision, regardless of the length of sentence imposed by the court, Defendant expressly agreed upon completion of his sentence to "any term of civil commitment until such time that he is determined by a psychiatrist or psychologist of the United States Bureau of Prisons not to be 'sexually dangerous to others . . . ." Defendant contends that this agreement mitigates against a

lengthy term of incarceration of 292 to 365 months as calculated under the sentencing guidelines.

16.   In fact, by accepting the plea agreement, the Court could reasonably justify any variance from the sentencing guidelines it deems appropriate which serves the purposes set forth in § *3553(a)*. Should the Court determine the purposes of §3533(a) are served by a sentence of 24 months, Michael would still be subject to a term of civil commitment until such time as the "government" is satisfied that he is no longer deemed sexually dangerous to others.

17.   The issue then becomes, under what conditions of confinement Michael will be held. There is some concern that (due to Michael's immaturity, sexual compulsivity, and naivete), incarceration in the normal population of the federal bureau of prisons could be extraordinarily dangerous to his heath and safety. Such lengthy incarceration as opposed to civil commitment could easily be seen as an obstacle to his rehabilitation and treatment and, in turn, prove detrimental to his future relationship with society.

18.   Defendant does not feel compelled to address each of the remaining issues identified in paragraph 4 supra., as each of these matters are adequately presented in the PSR.

Wherefore, the above matters considered, Defendant prays this Court grant his motion by entering a sentence outside the Guideline range (a "variance" ) and sentence Defendant to a term of imprisonment of 24 months.

Respectfully submitted this day, July 26, 2007.

/s/Timothy C. Halstrom
Timothy C. Halstrom
Bar Number HAL021
Attorney for Michael David Harvey

Of Counsel:
Timothy C. Halstrom
Bar # HAL021
Attorney At Law
4170 Lomac Street
Montgomery, Alabama 36106
(334)272-6464

**CERTIFICATE OF SERVICE**

     I hereby certify that on July 26, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the respective parties.

     /s/Timothy C. Halstrom
     Timothy C. Halstrom
     Bar Number HAL021